IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAYOR AND CITY COUNCIL
OF BALTIMORE, et al., :

    Plaintiffs, :

v. : Civil Action No. GLR-18-3560

ACTELION PHARMACEUTICALS, :
LTD., et al.,
 :
    Defendants.

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Actelion Pharmaceuticals Ltd., Actelion Pharmaceuticals US, Inc., and Janssen Research & Development LLC's[1] (collectively, "Actelion") Motion to Dismiss Pursuant to 12(b)(6) for Failure to State a Claim (ECF No. 39). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

---

[1] On February 25, 2019, the parties stipulated to substituting Janssen Research & Development, LLC for Actelion Clinical Research, Inc., which had previously merged with Janssen Research & Development, LLC. (ECF No. 38).

# I. BACKGROUND[2]

## A. Factual Background

Actelion is a pharmaceutical company that produces and sells Tracleer, the brand name for the drug bosentan, which is used to treat pulmonary artery hypertension ("PAH"). (Pls.' Consol. Class Action Compl. & Demand for Jury Trial ["Am. Compl."] ¶ 1, ECF No. 34). PAH is a disorder in which elevated blood pressure causes narrowing of the arteries between the heart and lungs, restricting blood flow and causing extra strain on the heart. (Id.). PAH is relatively rare, affecting between 10,000 and 20,000 people in the United States, but it is chronic and potentially fatal. (Id.).

Researchers at Hoffman-LaRoche Inc. ("Roche") discovered and developed bosentan in the 1990s. (Id. ¶ 92). In 1992, the co-inventors of bosentan submitted a patent application to the U.S. Patent and Trademark Office ("PTO"). (Id. ¶ 93). In 1994, the PTO issued the patent for bosentan (the "Patent") and assigned it to Roche. (Id. ¶ 94). In 1997, Roche assigned the Patent to Actelion—which was founded by a small group of former Roche scientists and managers—giving Actelion the exclusive right to develop, make, and sell products covered by the Patent. (Id. ¶ 97). Actelion has been the sole licensee of the Patent since 1997. (Id.).

In 2000, Actelion sought approval from the U.S. Food and Drug Administration ("FDA") to sell tablets of bosentan under the tradename Tracleer for the treatment of PAH.

---

[2] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Amended Complaint (ECF No. 34) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

(Id. ¶¶ 98–99). At the time, there were no approved oral treatments for PAH. (Id. ¶ 101). The FDA approved Tracleer for treatment of PAH on November 20, 2001. (Id. ¶ 107). In approving Tracleer, the FDA granted Actelion two regulatory exclusivities: first, because Tracleer was a new chemical entity, Actelion would have regulatory exclusivity until November 20, 2006; and second, the FDA deemed Tracleer an "orphan drug," giving Actelion an additional two years of market exclusivity. (Id. ¶ 108). These regulatory exclusivities guaranteed that Actelion would not face competition to Tracleer from generics until November 20, 2008 at the earliest. (Id. ¶¶ 108, 117). Further, Actelion would have patent exclusivity over Tracleer until the Patent expired on November 20, 2005. (Id. ¶¶ 96, 109).

After receiving FDA approval, Actelion launched the Tracleer Access Program ("TAP"), which limited sales of Tracleer to purchasers who agreed to certain limitations on the use of the drug. (Id. ¶¶ 111, 124, 126). In 2009, the FDA approved a Risk Evaluation and Mitigation Strategy ("REMS") for Tracleer. (Id. ¶ 118). The REMS provided that "Tracleer is available only through a special restricted distribution program called [TAP]" and "Tracleer may be dispensed only to patients who are enrolled in and meet all conditions of [TAP]." (Id. ¶ 120). The REMS also explained that only prescribers and pharmacies registered with TAP may prescribe and distribute Tracleer. (Id. ¶ 121).

Beginning in 2009, various generic drug manufacturers—Zydus Pharmaceuticals (USA) Inc. ("Zydus") and its partner Cadila Healthcare Ltd. ("Cadila"), Apotex, Inc. ("Apotex"), Actavis, Inc. ("Actavis"), and Roxane Laboratories, Inc. ("Roxane")

3

(collectively, the "Generics")—sought to purchase samples of Tracleer from Actelion's certified distributors and wholesalers in order to conduct bioequivalence testing, which is a prerequisite to FDA approval of the generic version of the brand-name drug. (See id. ¶¶ 42–52, 130, 138–58, 161–72). In their requests, the Generics indicated they would be willing to pay market price for Tracleer and comply with any limitations in Tracleer's TAP and REMS. (Id. ¶¶ 140, 143–44, 146, 150, 153, 162, 169). Nonetheless, Actelion and its certified distributors and wholesalers repeatedly denied the Generics' requests to purchase Tracleer. (Id. ¶¶ 138–39, 141, 152, 154–55, 157, 165–66). At the time, Actelion advanced two primary reasons for its refusal to sell Tracleer to the Generics: (1) Actelion sought to protect its intellectual property rights; and (2) providing Tracleer to Generics would violate the REMS' distribution restrictions. (Id. ¶ 170; see also id. ¶¶ 152, 155, 157, 166). Without access to samples of Tracleer, the Generics were unable to conduct bioequivalence studies, and therefore could not seek approval of generic bosentan from the FDA. (See id. ¶ 167–68).

In September 2012, Actelion sued Apotex and Roxane in the U.S. District Court for the District of New Jersey, seeking a declaration that Actelion had no duty to supply Tracleer samples to prospective generic competitors and that doing so would be in violation of the REMS for Tracleer. (Id. ¶¶ 173–76). Apotex and Roxane filed counterclaims against Actelion in November 2012, alleging that Actelion's refusal to distribute samples of Tracleer for bioequivalence testing constituted an abuse of monopoly power in violation of federal and state antitrust laws and FDA regulations. (Id. ¶¶ 177–86). The same month,

Actavis moved to intervene, complaining that Actelion refused to sell Tracleer in order to block or delay generic competition. (Id. ¶¶ 187–88).

On January 16, 2013, Actelion moved to dismiss Apotex, Roxane, and Actavis's counterclaims. (Id. ¶ 189). In May 2013, while Actelion's motion to dismiss was still pending, Apotex again requested Tracleer samples from Actelion, this time attaching a recent letter from the FDA approving the safety protocols used in Apotex's bioequivalence testing. (Id. ¶ 199). As it had done before, Actelion refused Apotex's request. (Id.). Zydus and Cadila intervened in the litigation on July 9, 2013 on the grounds that Actelion had also denied them access to Tracleer samples. (Id. ¶ 200).

The court denied Actelion's motion to dismiss on October 17, 2013. (Id. ¶ 206). On November 1, 2013, Actelion settled with Apotex on undisclosed terms, and Apotex dismissed its claims and counterclaims with prejudice. (Id. ¶ 212). Actelion settled with the remaining Generics on undisclosed terms in February 2014. (Id. ¶ 213).

The Patent expired on November 20, 2015, ending Actelion's legal exclusivity over bosentan. (Id. ¶¶ 1, 109). To date, there is no generic version of bosentan available on the market. (Id. ¶ 1).

**B.     Procedural Background**

Plaintiff Mayor & City Council of Baltimore (the "City") filed its initial Complaint against Actelion on November 19, 2018. (ECF No. 1). Upon the City and Government Employees Health Association's ("GEHA") unopposed Motion for Consolidation and Appointment of Interim Class Counsel (ECF No. 32), this Court consolidated Government

5

Employee Health Association v. Actelion Pharmaceuticals, Ltd., et al., Case No. 1:18-cv-3571-GLR (D.Md. filed Nov. 20, 2018) with the present case on January 18, 2019. (ECF No. 33). On January 25, 2019, the City and GEHA (collectively, the "Named Plaintiffs") filed a Consolidated Class Action Complaint and Demand for Jury Trial ("Amended Complaint") on behalf of the Named Plaintiffs and similarly situated individuals in thirty states and U.S. territories.[3] (ECF No. 34). In their forty-six-count Amended Complaint, Plaintiffs allege: unlawful refusals to deal and attempts to monopolize in violation of § 2 of the Sherman Act, 15 U.S.C. § 2 (2018) (Count 1); violations of various state antitrust

---

[3] Plaintiffs define the putative class as "[a]ll persons and entities" in Arizona, California, District of Columbia, Florida, Illinois, Iowa, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Utah, Virginia, West Virginia, and Wisconsin "who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price of Tracleer or bosentan, other than for resale, at any time during the period from November 20, 2015 through and until the anticompetitive effects of Defendants' challenged conduct cease . . . ." (Am. Compl. ¶ 286).

laws[4] (Counts 2–26); and violations of various state consumer protections laws[5] (Counts 27–46). (Am. Compl. ¶¶ 296–659). Plaintiffs seek declaratory, injunctive, and equitable relief. (Id. at 74–124).

---

[4] Specifically, Plaintiffs allege violations of the: Arizona Uniform State Antitrust Act (Count 2) (Am Compl. ¶¶ 312–19); District of Columbia Antitrust Act (Count 3) (Id. ¶¶ 320–25); Illinois Antitrust Act (Count 4) (Id. ¶¶ 326–31); Iowa Competition Law (Count 5) (Id. ¶¶ 332–36); Maine Antitrust Statute (Count 6) (Id. ¶¶ 337–42); Maryland Antitrust Statute (Count 7) (Id. ¶¶ 343–49); Massachusetts General Statutes (Count 8) (Id. ¶¶ 350–58); Michigan Antitrust Reform Act (Count 9) (Id. ¶¶ 359–64); Minnesota Antitrust Law (Count 10) (Id. ¶¶ 365–70); Mississippi Antitrust Statute (Count 11) (Id. ¶¶ 371–78); Missouri Merchandising Practices Act (Count 12) (Id. ¶¶ 379–84); Nebraska Junkin Act (Count 13) (Id. ¶¶ 385–90); Nevada Unfair Trade Practices Act (Count 14) (Id. ¶¶ 391–99); New Hampshire Antitrust Statute (Count 15) (Id. ¶¶ 400–05); New Mexico Antitrust Act (Count 16) (Id. ¶¶ 406–11); New York General Business Law (Count 17) (Id. ¶¶ 412–17); North Carolina General Statutes (Count 18) (Id. ¶¶ 418–22); North Dakota Uniform State Antitrust Act (Count 19) (Id. ¶¶ 423–28); Oregon Antitrust Law (Count 20) (Id. ¶¶ 429–34); Puerto Rican Anti-Monopoly Act (Count 21) (Id. ¶¶ 435–39); Rhode Island Antitrust Act (Count 22) (Id. ¶¶ 440–44); South Dakota Antitrust Statute (Count 23) (Id. ¶¶ 445–50); Utah Antitrust Act (Count 24) (Id. ¶¶ 451–56); West Virginia Antitrust Act (Count 25) (Id. ¶¶ 457–63); and Wisconsin Antitrust Act (Count 26) (Id. ¶¶ 464–72).

[5] Specifically, Plaintiffs allege violations of the: Arizona Consumer Fraud Act (Count 27) (Am. Compl. ¶¶ 479–87); California Unfair Competition Law (Count 28) (Id. ¶¶ 488–96); District of Columbia Consumer Protection Procedures Act (Count 29) (Id. ¶¶ 497–505); Florida Deceptive and Unfair Trade Practices Act (Count 30) (Id. ¶¶ 506–16); Illinois Consumer Fraud and Deceptive Business Practices Act (Count 31) (Id. ¶¶ 517–24); Massachusetts Consumer Protection Act (Count 32) (Id. ¶¶ 525–33); Minnesota Consumer Fraud Act (Count 33) (Id. ¶¶ 534–43); Montana Unfair Trade Practices and Consumer Protection Act) (Count 34) ((Id. ¶¶ 544–48); Nebraska Consumer Protection Act (Count 35) (Id. ¶¶ 549–57); Nevada Deceptive Trade Practices Act (Count 36) (Id. ¶¶ 558–67); New Hampshire Consumer Protection Act (Count 37) (Id. ¶¶ 568–77); New Mexico Unfair Practices Act (Count 38) (Id. ¶¶ 578–87); North Carolina Unfair Trade and Business Practices Act (Count 39) (Id. ¶¶ 588–96); Oregon Unlawful Trade Practices Act (Count 40) (Id. ¶¶ 597–607); Rhode Island Deceptive Trade Practices Act (Count 41) (Id. ¶¶ 608–20); South Carolina Unfair Trade Practices Act (Count 42) (Id. ¶¶ 621–29); South Dakota Deceptive Trade Practices and Consumer Protection Law (Count 43) (Id. ¶¶ 630–39);

On February 25, 2019, Actelion moved to dismiss Plaintiffs' Amended Complaint for failure to state a claim. (ECF No. 39). Plaintiffs filed an Opposition on March 27, 2019. (ECF No. 44). On April 11, 2019, Actelion filed its Reply. (ECF No. 45).

## II. DISCUSSION

### A. Standard of Review

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of

---

Vermont Consumer Fraud Act (Count 44) (Id. ¶¶ 640–45); Virginia Consumer Protection Act (Count 45) (Id. ¶¶ 646–52); and West Virginia Consumer Credit and Protection Act (Count 46) (Id. ¶¶ 653–59).

8

the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.** **Analysis**

Actelion advances several arguments for dismissing Plaintiffs' Amended Complaint. First, Actelion asserts that all but four of Plaintiffs' claims are time-barred by the relevant statutes of limitations. Second, Actelion maintains that Plaintiffs lack Article III standing to bring certain of their state claims. The Court considers each argument in turn.[6]

---

[6] Actelion also argues that Plaintiffs fail to plead a plausible anticompetitive scheme, Plaintiffs' "group pleading" does not satisfy the requirements of Rule 8, and Plaintiffs fail to plead the statutory requirements of their various state claims. Because the Court agrees with Actelion that most of Plaintiffs' claims are time-barred and Plaintiffs lack standing to

9

1. **Statutes of Limitations**

Actelion argues that all but four[7] of Plaintiffs' forty-six claims are time-barred because the relevant statutes of limitations are four years or less,[8] and Actelion's last alleged anti-competitive act—its February 2014 settlement with the Generics—took place more than four years before the filing of the initial Complaint. Plaintiffs concede that Actelion's anti-competitive behavior occurred only between 2009 and February 2014, but they argue that their injuries accrued when the Patent expired on November 20, 2015. Alternatively, Plaintiffs submit that a separate cause of action accrues each time they, as

---

bring their remaining claims, the Court does not need to address the rest of Actelion's arguments.

[7] The statutes of limitations for Count 6 (Maine Antitrust Statute), Count 26 (Wisconsin Antitrust Act), Count 33 (Minnesota Consumer Fraud Act), and Count 44 (Vermont Consumer Fraud Act) are each six years.

[8] The statute of limitations for the majority of Plaintiffs' state antitrust claims is four years or less. See Ariz. Rev. Stat. Ann. § 44-1410B (4 years); D.C. Code § 28-4511B (4 years); 740 Ill. Comp. Stat. 10/7(2) (4 years); Iowa Code § 553.16.2 (4 years); Md. Code Ann., Com. Law § 11-209(d) (4 years); Mass. Gen. Laws ch. 260, § 5A (4 years); Mich. Comp. Laws § 445.781(2) (4 years); Minn. Stat. § 325D.64 (4 years); Miss. Code § 15-1-49 (3 years); Mo. Rev. Stat. § 416.131 (4 years); Neb. Rev. Stat. Ann. § 25-212 (4 years); Nev. Rev. Stat. § 598A.220 (4 years); N.M. Stat. Ann. § 57-1-12 (4 years); N.Y. Gen. Bus. Law § 340.5 (4 years); N.C. Gen. Stat. § 75-16.2 (4 years); N.D. Cent. Code § 51-08.1-10 (4 years); Or. Rev. Stat. § 646.800 (4 years); P.R. Laws tit. 10, § 267 (4 years); 6 R.I. Gen. Laws § 6-36-23 (4 years); S.D. Codified Laws § 37-1-14.4 (4 years); Utah Code Ann. § 76-10-3117 (4 years); W.Va. Code § 47-18-11 (4 years).

Likewise, the statute of limitations for the majority of Plaintiffs' claims arising under state consumer protections laws is four years or less. See Ariz. Rev. Stat. Ann. § 12-541 (1 year); Cal. Bus. & Prof. Code § 17208 (4 years); D.C. Code § 12-301(8) (3 years); 815 Ill. Comp. Stat. Ann. 505/10A(e) (3 years); Mass. Gen. Laws ch. 260, § 5A (4 years); Mont. Code § 27-2-211 (2 years); Neb. Rev. Stat. § 59-1612 (4 years); Nev. Rev. Stat. § 11.190 (4 years); N.H. Rev. Stat. § 358-A:3 (4 years); Or. Rev. Stat. § 646.638 (1 year); 6 R.I. Gen. Laws § 6-36-23 (4 years); S.C. Code Ann. § 39-5-150 (3 years); S.D. Codified Laws § 37-24-33 (4 years); Va. Code Ann. § 59.1-204.1A (2 years); W.Va. Code Ann. § 46A-5-101 (4 years).

indirect purchasers, pay an unlawfully high price for Tracleer. The Court agrees with Actelion.

A Sherman Act claim is barred "unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b (2018). A cause of action generally accrues "when a defendant commits an act that injures a plaintiff's business." In re Titanium Dioxide Antitrust Litig., 959 F.Supp.2d 799, 831 (D.Md. 2013) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971)). "Even when defendants continue to perform overt acts in furtherance of an antitrust conspiracy within the statutory period, plaintiffs' injuries also must fall within the limitations period in order not to be time-barred." Id. (quoting Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 218 (4th Cir. 1987)).

To determine the date from which the cause of action accrued, courts must first assess "whether the injury alleged by [plaintiffs] was caused by a single or a continuing violation of the Act." Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp., 546 F.2d 570, 572 (4th Cir. 1976). "Distinguishing between the two, the Supreme Court has held that a single violation necessarily occurs 'within some specific and limited time span,' whereas continuing violations 'inflict continuing and accumulating harm.'" Id. (quoting Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15 (1968)). "For this reason, exclusion from participation in an industry constitutes a continuing conspiracy, unless the exclusion is final in its impact." Id. (first citing Poster Exch., Inc. v. Nat'l Screen Serv.

Corp., 517 F.2d 117, 126–27 (5th Cir. 1975); and then citing Twin City Sportservice, Inc. v. Charles O. Finley & Co., 512 F.2d 1264, 1270 (9th Cir. 1975)).

Consistent with this principle, "each refusal to deal [by the defendant] gives rise to a claim under the antitrust laws." Id. (quoting Pioneer Co. v. Talon, Inc., 462 F.2d 1106, 1108–09 (8th Cir. 1972)). However, "even when the plaintiff charges a continual refusal to deal, the statute of limitations commences to run from the last overt act causing injury to the plaintiff's business." Id. (citing Poster Exch., 517 F.2d at 128) (emphasis added). Indeed, courts in other circuits have noted that in the refusal-to-deal context, "acts that 'simply reflect or implement a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations.'" Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc., 392 F.3d 265, 270 (8th Cir. 2004) (quoting DXS Inc. v. Siemens Med. Sys., Inc., 100 F.3d 462, 467–68 (6th Cir. 1996)).

Plaintiffs' first argument—that the cause of action accrued when the Patent expired on November 20, 2015—misses the mark. The expiration of the Patent is not an overt act by Actelion; rather, Actelion had no control over or involvement in the expiration of the Patent, which was set to expire by law. Even if the expiration of the Patent were an overt act by Actelion, Plaintiffs fail to allege how the expiration of the Patent alone caused them any injury. As such, Plaintiffs' cause of action did not accrue upon the expiration of the Patent on November 20, 2015.

Turning to their second argument, Plaintiffs primarily rely on two cases to support the contention that a cause of action accrues each time they purchase Tracleer at an

12

unlawfully high price: Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997), and Berkey Photo Inc. v. Eastman Kodak Co., 603 F.2d 263 (2d Cir. 1979). These cases are inapposite. In Klehr, the Supreme Court noted that "each sale to the plaintiff[] starts the statutory period running again" in the context of a price-fixing conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (2018), not a refusal-to-deal claim. 521 U.S. at 189. Likewise, Berkey Photo—which, in any event, is not controlling in this circuit—addressed allegations that the defendant used its monopoly status to engage in predatory pricing. See 603 F.2d at 295 (noting that, in the context of predatory pricing, the injury to the purchaser occurs not upon the anti-competitive conduct but when the defendant boosts its price to excessive levels).

Though Plaintiffs allege that Actelion "had the power to raise and/or maintain the price of bosentan at supra[-]competitive levels[,]" they do not allege that Actelion actually did so. (Am. Compl. ¶ 272). Nor do Plaintiffs allege that Actelion engaged in illegal price fixing or predatory pricing. Plaintiffs merely allege that "Actelion's scheme has forced Plaintiffs and other purchasers to pay higher prices for bosentan for far longer than they otherwise would have" due to the absence of competition from the Generics. (Id. ¶ 11). Because Plaintiffs' payment of alleged anti-competitive prices is merely an unabated consequence of Actelion's prior refusals to deal, Plaintiffs' purchases of Tracleer do not give rise to separate causes of action. " See Midwestern Mach. Co., 392 F.3d at 270.

Instead, Plaintiffs' cause of action accrued upon Actelion's last overt anti-competitive act, which Plaintiffs identify as Actelion's settlement with the Generics in

13

February 2014. The four-year statute of limitations for Plaintiffs' antitrust claims arising from the February 2014 settlement agreement ran until February 2018. Because the City filed its initial Complaint on November 19, 2018, Plaintiffs' claims under the Sherman Act[9] and various state statutes are time-barred. Therefore, the Court will grant Actelion's Motion as to those counts.

### 2. Standing

Having dismissed Counts 1–5, 7–25, 27–32, 34–43, and 45–46, the Court turns to Actelion's argument that Plaintiffs lack standing to bring their remaining claims under the Maine Antitrust Statute (Count 6), Wisconsin Antitrust Act (Count 26), Minnesota Consumer Fraud Act (Count 33), and Vermont Consumer Fraud Act (Count 44).

At the outset, the Court must address the nature of Actelion's Article III standing arguments, which it raises in a motion to dismiss under Rule 12(b)(6). To be sure, "standing . . . is generally associated with Civil Procedure Rule 12(b)(1) pertaining to subject matter jurisdiction." Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC, No. CIV.A. ELH-12-2376, 2013 WL 3895011, at *5 (D.Md. July 25, 2013) (quoting CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir.

---

[9] In their Amended Complaint, Plaintiffs seek injunctive relief for their Sherman Act claim under § 26 of the Clayton Act, 15 U.S.C. § 26 (2018). (Am. Compl. ¶ 306). Section 26 of the Clayton Act provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . ." 15 U.S.C. § 26. Because the Court will dismiss Plaintiffs' Sherman Act claim, the Court will also deny Plaintiffs' request for injunctive relief.

2011)). "Article III gives federal courts jurisdiction only over cases and controversies, and standing is an integral component of the case or controversy requirement." Id. (quoting CGM, 664 F.3d at 52) (internal quotations omitted). Thus, "defendants may aptly challenge its existence by a motion to dismiss for lack of jurisdiction over the subject matter, pursuant to Federal Rule of Civil Procedure 12(b)(1)." Id. (quoting Miller v. Pac. Shore Funding, 224 F.Supp.2d 977, 994 (D.Md. 2002)); see also McInnes v. Lord Balt. Empl. Ret. Income Account Plan, 823 F.Supp.2d 360, 362 (D.Md. 2011) (noting that "standing is an element of subject matter jurisdiction").

A plaintiff's statutory standing, however, is "a concept distinct from Article III and prudential standing." Freight Drivers, 2013 WL 3895011, at *5 (quoting CGM, 664 F.3d at 52) "Statutory standing applies only to legislatively-created causes of action and concerns whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action." Id. (quoting CGM, 664 F.3d at 52) (internal quotations omitted). A plaintiff has statutory standing if "the plaintiff is a member of the class given authority by a statute to bring suit." Id. (quoting CGM, 664 F.3d at 52) (internal quotations omitted). Thus, the U.S. Court of Appeals for the Fourth Circuit has held that a "dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim, and should be analyzed as a motion under Fed.R.Civ.P. 12(b)(6)." Id. at *6 (quoting CGM, 664 F.3d at 52) (internal quotations omitted). With this in mind, the Court reviews Actelion's standing arguments through the lens of statutory standing, not Article III standing.

In deciding whether a plaintiff has antitrust standing, a court must consider five factors:

> (1) the causal connection between an antitrust violation and harm to the plaintiffs, and whether that harm was intended; (2) whether the harm was of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws; (3) the directness of the alleged injury; (4) the existence of more direct victims of the alleged antitrust injury; and (5) problems of identifying damages and apportioning them among those directly and indirectly harmed.

Novell, Inc. v. Microsoft Corp., 505 F.3d 302, 311 (4th Cir. 2017). The first two factors encompass "antitrust injury" and "ensure that the plaintiff claims the proper type of injury." BNLfood Invs. Ltd. SARL v. Martek Biosciences Corp., No. CIV. WDQ-11-0446, 2011 WL 6439451, at *3 (D.Md. Dec. 14, 2011) (quoting Novell, 505 F.3d at 311, 315). The other three factors, which weigh the "directness or remoteness of the plaintiff's alleged antitrust injury," may "further constrict the number of private plaintiffs" who may sue. Id. (quoting Novell, 505 F.3d at 311, 315).

In the context of a putative class action, the "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class.'" Lewis v. Casey, 518 U.S. 343, 357 (1996) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)). Absent such a requirement, "a plaintiff would be able to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating to those states" and "drag[] defendants into expensive nationwide class discovery, potentially without a good-faith basis." In re Magnesium Oxide Antitrust Litig.,

Civ. No. 10–5943 (DRD), 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011) "In other words, the plaintiff would have to do 'no more than name the preserve on which he intends to hunt.'" Id. (quoting Johnson v. Ga. Highway Express, Inc., 417 F.2d 1122, 1126 (5th Cir. 1969)).

Because "[t]he named plaintiff 'must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants,'" courts in the Fourth Circuit have dismissed claims brought under the laws of states in which no named plaintiff is alleged to have been harmed. See Zaycer v. Sturm Foods, Inc., 896 F.Supp.2d 399, 408 (D.Md. 2012) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)) (dismissing state consumer protection claims for states lacking a named plaintiff); see also Hassan v. Lenovo, No. 18-cv-105, 2019 WL 123002, at *2 (E.D.N.C. Jan. 7, 2019) (dismissing consumer putative class action claims under the consumer class action laws of all states other than the state in which the plaintiff was harmed).

Actelion advances two reasons why Plaintiffs lack standing to bring their remaining state claims: (1) Plaintiffs do not allege that Actelion engaged in any conduct in Maine or Wisconsin, nor do they allege that the Named Plaintiffs purchased or paid for Tracleer in those states, as required under the Maine Antitrust Statute[10] and Wisconsin Antitrust Act[11];

---

[10] See In re Magnesium Oxide, 2011 WL 5008090, at *8 n.10 (dismissing plaintiffs' claims brought under Maine's antitrust statute because the named plaintiffs did not purchase defendant's products in Maine).

[11] Olstad v. Microsoft Corp., 700 N.W.2d 139, 158 (Wis. 2005) (holding that under Wisconsin's antitrust act, a plaintiff bringing a claim must allege that: "(1) actionable conduct, such as the formation of a combination or conspiracy, occurred within this state, even if its effects are felt primarily outside Wisconsin; or (2) the conduct complained of

and (2) Plaintiffs fail to allege that Actelion engaged in false or deceptive conduct at all, let alone in Minnesota and Vermont, as required by the Minnesota Consumer Fraud Act[12] and Vermont Consumer Fraud Act.[13] Plaintiffs respond that their allegations are sufficient and the Court's determination on standing in a multistate class action should be deferred until after class certification. The Court agrees with Actelion.

Here, Plaintiffs generally allege that members of the putative class purchased Tracleer within Maine, Wisconsin, Minnesota, and Vermont, and that Actelion attempted to monopolize the trade or commerce of bosentan within those states. (See Am. Compl. ¶¶ 337–42, 464–72, 534–43, 640–45). Plaintiffs fail to allege, however, that the Named Plaintiffs suffered any specific harm in Maine, Wisconsin, Minnesota, or Vermont. Indeed, Plaintiffs only allege that the Named Plaintiffs suffered specific harm in Maryland, California, and Florida—the states in which the Named Plaintiffs purchased Tracleer. (See

---

'substantially affects' the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state").

[12] In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig., 64 F. Supp. 3d 665, 701 (E.D. Pa. 2014), on reconsideration in part sub nom. In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig., MDL No. 2445, 2015 WL 12910728 (E.D.Pa. Apr. 14, 2015) ("Minnesota requires that the pleadings contain specific allegations of fraud or deceit that comply with the heightened standard of Federal Rule of Civil Procedure 9(b).").

[13] In re TFT-LCD (Flat Panel) Antitrust Litig., MDL No. 1827, 2011 WL 4501223, at *4 (N.D. Cal. Sept. 28, 2011) ("To prevail on a [Vermont Consumer Fraud Act] claim, one must show that: (1) there was a representation, practice, or omission likely to mislead the consumer; (2) the consumer interpreted the message reasonably under the circumstances; and (3) the misleading effects were material, that is, likely to affect the consumers conduct or decision with regard to a product.") (quoting Lang McLaughry Spera Real Estate, LLC v. Hinsdale, 35 A.3d 100, 105 (Vt. 2011)).

id. ¶¶ 17–18).[14] The Court has already concluded that it will dismiss Plaintiffs' claims under the laws of Maryland, California, and Florida because the statutes of limitations on those claims have run. The Court therefore need not wait until the class certification stage to assess Plaintiffs' standing to bring claims under the laws of Maine, Wisconsin, Minnesota, and Vermont, where the Named Plaintiffs have not pleaded any specific injury. See Zaycer, 896 F.Supp.2d at 408. Accordingly, the Court will grant Actelion's Motion to Dismiss as to those counts.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Actelion's Motion to Dismiss (ECF No. 39). A separate order follows.

Entered this 30th day of September, 2019.

/s/
George L. Russell, III
United States District Judge

---

[14] Plaintiffs also allege that GEHA purchased Tracleer in Colorado, Louisiana, Pennsylvania, Ohio, Kansas, Tenneesee, and Texas; however, Plaintiffs do not bring antitrust claims under the laws of those states. (Am. Compl. ¶ 18).