IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GOVERNMENT EMPLOYEES HEALTH ASSOCIATION,** on behalf of itself and all others similarly situated**,**   *Plaintiff*, | * * * * | |
| v. | * | Civil Case No: 1:18-cv-03560-GLR |
| **ACTELION PHARMACEUTICALS LTD., et al,** | | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

**I.     Introduction**

On May 23, 2022, U.S. District Judge George Russell referred this case for assignment to a Magistrate Judge of this Court for discovery and all related scheduling at the request of the parties.  (ECF Nos. 138 and 142).  The current discovery dispute concerns third-party discovery directed to the Mayor and City Council of Baltimore ("Baltimore City"), formerly a named plaintiff in this case, by Defendants (collectively "Actelion").  On October 3, 2022, the parties' fact discovery deadline[1], Actelion filed its Motion to Compel.  (ECF No. 166).  Baltimore City filed an opposition (ECF No. 170-1) and Actelion has replied (ECF No. 182).  The Court has reviewed these respective submissions and finds that no hearing is necessary.  Loc. R. 105.6 (D. Md. 2021).  For the reasons set forth more fully below, the Court GRANTS in part and DENIES in part Actelion's Motion to Compel.

---

[1] On October 4, 2022, Judge Russell granted a limited extension of that deadline to November 4, 2022, for the remaining depositions to take place.  (ECF No. 167).  Additionally, one third-party deposition is scheduled to take place on or about November 17, 2022.  (ECF No. 181).

**II.     Background**

Actelion is a drug manufacturer and Tracleer is one of its products. More than ten years ago, generic manufacturers anticipated the expiration of Actelion's patents on Tracleer and prepared to enter the market with a generic version. Those manufacturers requested samples of Tracleer from Actelion to assist them in manufacturing such a version. Based on alleged unjustified delays by Actelion in that process, the generic manufacturers had litigation with Actelion that was resolved by settlement in April of 2014. The instant antitrust litigation, filed in November of 2018, does not include generic manufacturers but is instead brought by a purported class of those forced to pay higher prices for Tracleer due to the unavailability of a cheaper generic version caused by Actelion's actions in effectively blocking competition. Although Baltimore City was originally a separately named plaintiff, on or about December 17, 2021, its claims were dismissed without prejudice and it was terminated from the proceedings.[2] (ECF No. 103). It remains a so-called "absent member" of the remaining Plaintiff class.

The instant dispute centers on a Rule 45 subpoena that Actelion served on Baltimore City on April 13, 2022, approximately four months after Baltimore City exited the case as a named plaintiff. Baltimore City filed its responses and objections on May 11, 2022. (ECF No. 166-3). Actelion and Baltimore City had an unsuccessful meet and confer on May 25, 2022. (ECF No. 166-5 at 1). On August 11, 2022, Actelion sent another letter requesting compliance with its April 13, 2022 subpoena. *Id.* at 2. Baltimore City sent a response and reiterated its objections on September 2, 2022. *Id.* at 5. On September 15, 2022, during a call with Baltimore City, Actelion offered to narrow the categories of its subpoena, as it confirmed in a September 20, 2022 email.

---

[2] The docket is not entirely clear as to the circumstances of Baltimore City's exit. A stipulation of voluntary dismissal was filed by the parties and approved by the Court. (ECF No. 101). However, that order was rescinded and replaced by the Court's order of December 17, 2021. (ECF No. 103). In any event, no objection by Actelion to Baltimore City's dismissal appears on the docket.

*Id.* at 9.  In a final volley, Baltimore City sent correspondence on September 21, 2022, declining to produce documents and asserting the Actelion was already in possession of much of the data it sought.  *Id.* at 8–9.

On October 3, 2022, Actelion filed its motion to compel, narrowing its requests to five of its initial eighteen.  (ECF No. 166-1 at 2).  Specifically, Actelion seeks Baltimore City's health plan design documents, formularies, transaction-level claims data (which show payments for Tracleer and generic bosentan), agreements with Pharmacy Benefits Managers ("PBMs"), and step-therapy edits for Tracleer and its generic, bosentan.  *Id.* at 3.  Actelion argues that this information is all directly relevant to a key issue in this case—the price that class members paid for Tracleer or bosentan (to the extent that either was purchased during the class period).  *Id.*  Actelion notes that, prior to its dismissal, Baltimore City actually agreed to produce similar documents to those requested above in response to Requests for Production served by Actelion.  Specifically, Baltimore City agreed to: (1) produce transactional purchase data for the damages period, (2) search for and produce PBM agreements, and (3) search for and produce formularies and summary plan documents.  (ECF No. 166-1 at 5; 166-4 at 12, 16, 19).  Actelion acknowledges that Baltimore City is an "absent class member" which, under some circumstances, might protect it from some discovery.  However, Actelion asserts that any such protection is not absolute, that Actelion has satisfied the exceptions to that protection, and that Baltimore City's former status as a named Plaintiff limits the extent of any such protection that might otherwise attach.  (ECF No. 166-1 at 5).

For its part, Baltimore City argues that the standard for absent class member discovery of the type sought here is a showing of "necessity," not just relevance, and that Actelion has not satisfied that standard.  (ECF No. 170 at 5).  Further, Baltimore City argues that much if not all

the requested information is already in Actelion's possession or otherwise available, that Actelion agreed that Baltimore City need not respond to Actelion's then-pending discovery requests at the time of Baltimore City's exit as a named plaintiff (an exit agreed to by Actelion), and that Actelion's motion is untimely, coming on the last day of fact discovery. *Id.* at 5–6.

### III. Analysis

#### A. Timeliness

Baltimore City questions the timeliness of Actelion's motion. It is true that Actelion could have insisted on having its discovery answered by Baltimore City as a condition of agreeing to its dismissal in December of 2021 but chose not to do so. Waiting nearly four months to raise the issue showed some lack of diligence. But the parties were still well within the discovery period at the time, and the Court would not have quashed the subpoena on timeliness at that point. Baltimore City and Actelion then engaged in the sort of interaction that the Court encourages prior to formal motions practice from mid-May though the end of September, ultimately resulting in a greatly reduced scope of requested production, albeit one to which, in good faith, Baltimore City, did not agree. The Court will not, therefore, deny Actelion's motion altogether based on timeliness. The Court is, however, mindful of the schedule in this case and will, to an extent, take that into account in its decision below.

#### B. The Burnett Factors

The parties agree that *Burnett v. Ford Motor Co.*, No. 3:13-cv-14207, 2015 WL 3540886, at *1 (S.D.W. Va. June 4, 2015) provides the only guidance on this issue in the Fourth Circuit, and the Court has similarly concluded as much. In *Burnett*, Ford sought discovery from four individuals who were previously named plaintiffs before filing a voluntary dismissal, thus transitioning to absent class members. The court first articulated the "generally accepted rule . . .

4

that 'discovery from such unnamed class members is not permitted absent special circumstances.'" *Id*. at *1 (citations omitted). Describing the factors that assist a court in determining whether such special circumstances exist, the *Burnett* court summarized the following from the Seventh Circuit's decision in *Clark v. Universal Builders, Inc.,* 501 F.2d 324, 340–41 (7th Cir.1974): "(1) the discovery is not designed to take advantage of class members or reduce the size of the class, (2) the discovery is necessary, (3) responding to discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent." *Id*. The *Burnett* court emphasized that "the defendant must demonstrate a specific and actual need for the discovery, and show that the information sought is not available from the class representatives and is not already in the defendant's possession." *Id.* (*citing In re Carbon Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 212 (M.D. Fla 1993)).

At the same time, the *Burnett* court acknowledged that these concerns, though present, were not as acute in situations where the absent class members had previously been named plaintiffs, observing, "Certainly, when these individuals agreed to participate in the case in a representative capacity, they should have realized that they would be expected to respond to discovery requests at some point in the proceedings." *Id.* at *2. Further, the *Burnett* court noted that "the universal concern that an absent class member will incur legal fees as a consequence of the deposition is not applicable to the factual scenario here." *Id.* at *3. Thus, the court denied the absent class members' motion for a protective order, concluding that, rather than being ordinary absent class members being singled out for intrusive discovery perhaps in an effort to undermine the class, the previously-named plaintiffs instead "affirmatively interjected themselves into the prosecution of the claims and maintained their representative roles until opting for voluntary dismissals." *Id.*

5

...

Balancing tests, such as the one articulated in *Burnett* and the cases cited therein, provide an irresistible opportunity for advocacy, as the excellent attorneys in this case both demonstrate with equal but opposing aplomb.  In such circumstances, the Court finds it useful to re-focus on the concerns that the balancing test is meant to address.  In chief, the *Burnett* court seems most concerned about discovery that could have the effect of weakening the class by subjecting individual class members to burdens that could affect their willingness to remain in the class, and also with undermining the efficiencies that are meant to be achieved by the class action mechanism.  Thus, the *Burnett* court reiterated a heightened showing for such discovery to blunt those potential effects, requiring it to be uniquely in the possession or control of the responding parties, nonduplicative, confined to important issues, and not burdensome.  The amplitude of those requirements, in turn, fluctuates depending on the level of threat the discovery poses to both the integrity of the specific class and the class action mechanism as a tool of litigation management.  That is why, for example, in situations where a former named party is the discovery target, the *Burnett* court lowers the threshold for meeting those requirements to some extent.  But to be clear, the enhanced requirements for discovery under these circumstances (including necessity and burden), are never fully eliminated, including in the current case.

Here, the level of threat posed to both concerns is not particularly high.  Baltimore City is one class member among purported thousands, and there is no indication that allowing some discovery is a substantial threat to the class or significantly undermines the efficiencies of Rule 23.  Further, these are document requests, not depositions, which is a distinction the *Burnett* court found significant in assessing burden.  And Baltimore City's counsel for purposes of this motion was not only its counsel when it was a named plaintiff but remains counsel for the class.  As in *Burnett*, the issue of what class members paid for Tracleer and its generic are central to the

litigation, and although Actelion may already have some pieces of the discovery that in part address some of the information sought from Baltimore City, it describes remaining gaps that cannot otherwise be filled. (ECF No. 182 at 6-7 & n. 5).

As mentioned, the Court remains concerned about imposing an unnecessary burden on Baltimore City and the impact on the discovery schedule now that document discovery has closed. Accordingly, the Court will not compel compliance with all five categories of documents requested. The Court will, however, order Baltimore City to produce a class of documents among those that it had agreed to produce in discovery prior to its exit from the case where the Court judges the necessity to the underlying litigation to be most acute. Specifically, Baltimore City is ordered to produce transactional purchase data for Tracleer and bosentan for the damages period as it had agreed to do prior to its exit as a named plaintiff as described in its response to Request for Production Two (ECF No. 166-4 at 12). Baltimore City should do so by November 17, 2022. If, however, despite its good faith efforts, Baltimore City requires additional time for the production ordered here, the Court will likely consider a request for reasonable extension favorably if Baltimore City and Actelion cannot otherwise stipulate to any such extension.

### IV. Conclusion

As detailed above, Actelion's Motion to Compel (ECF No. 166) is hereby GRANTED in part and DENIED in part.

Date: <u>October 31, 2022</u>　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　J. Mark Coulson
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge