# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

GOVERNMENT EMPLOYEES HEALTH
ASSOCIATION, on behalf of itself and all
other similarly situated,

      Plaintiff,

v.

ACTELION PHARMACEUTICALS LTD.,
*et al.*,

      Defendants.

Case No. 18-cv-3560-GLR

███████████████████

## NON-PARTY MAYOR AND CITY COUNCIL OF BALTIMORE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DOCUMENTS IN RESPONSE TO RULE 45 SUBPOENA

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

LEGAL STANDARD.................................................................................................. 7

ARGUMENT .............................................................................................................. 8

   I.   Actelion Has Failed to Satisfy the Factors Necessary to Obtain Discovery From an Absent Class Member....................................................................................................... 8

     A.   The Requested Discovery Is Unnecessary and Duplicative of Information Already in Actelion's Possession. ............................................................................................ 8

       1.   Actelion's reliance on "relevance" rather than the established standard of "necessity" dooms its motion................................................................................................ 8

       2.   Actelion cannot establish necessity because it owns and possesses data on the price that virtually every class member paid for Tracleer and generic Tracleer. ......................... 9

       3.   The documents Actelion seeks do not contain Tracleer-specific pricing information................................................................................................................ 10

     B.   The Requested Discovery Requires Substantial Assistance from Counsel and Improperly Harasses Baltimore and Its Counsel. ................................................. 12

   II.   Baltimore's Former Named Plaintiff Status Does Not Justify Discovery. ........................ 15

   III.   The Requested Discovery is Untimely......................................................................... 17

   IV.   The Court Should Not Consider Any New Purported Reasons Actelion Manufactures in Its Reply Brief For Seeking Discovery From Baltimore........................................................... 19

CONCLUSION.......................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*A.B. v. Pac. Fertility Ctr.*,
   No. 18-cv-01586-JSC, 2019 WL 6605883 (N.D. Cal. Dec. 3, 2019)....................................15

*Burnett v. Ford Motor Co.*,
   No. 3:13-cv-14207, 2015 WL 3540886 (S.D. W.Va. June 4, 2015) ............................... *passim*

*Clark v. Universal Builders, Inc.*,
   501 F.2d 324 (7th Cir. 1974) ................................................................................................7

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) ...........................................................................................7

*Derricott v. Target Corp.*,
   No. 8:07-cv-00506, 2008 WL 11509722 (D. Md. Feb. 4, 2008)....................................18, 19

*In re Drassinower*,
   No. 3:19-CV-1715-JLS-AHG, 2021 WL 3772328 (S.D. Cal. Aug. 25, 2021) ......................16

*In re Fedex Ground Package Sys., Inc., Emp. Pracs. Litig.*,
   No. 3:05-MD-527-RM, 2007 WL 733753 (N.D. Ind. Mar. 5, 2007) ..........................7, 8, 9, 18

*Feldman v. Motorola, Inc.*,
   No. Civ-A-90-C-5887, 1992 WL 415382 (N.D. Ill. Nov. 5, 1992)...................................15, 16

*Hall v. Marriott Int'l Inc.*,
   No. 3:19-cv-01715, 2021 WL 1906464 (S.D. Cal. May 12, 2021) .......................................14

*McCarthy v. Paine Webber Grp., Inc.*,
   164 F.R.D. 309 (D. Conn. 1995)...........................................................................................12

*McPhail v. First Command Fin. Plan., Inc.*,
   251 F.R.D. 514 (S.D. Cal. 2008) .....................................................................................7, 12

*United States v. Smalls*,
   720 F.3d 193 (4th Cir. 2013) ...............................................................................................19

*In re USA Classic Sec. Litig.*,
   No. 93-CV-6667 (JSM), 1995 WL 686724 (S.D.N.Y. Nov. 17, 1995)............................15, 17

*Vedachalam v. Tata Am. Int'l Corp.*,
   No. C 06-00963, 2011 WL 13161567 (N.D. Cal. Aug. 12, 2011).............................14, 15, 16

*Virginia Dep't of Corr. v. Jordan*,
   921 F.3d 180 (4th Cir. 2019) ...............................................................................................14

*Webb v. Green Tree Servicing LLC*,
    No. 11-CV-02105-ELH, 2012 WL 3139551 (D. Md. July 27, 2012) ..............................18, 19

*Zollicoffer v. Gold Standard Baking, Inc.*,
    No. 13-CV-1524, 2020 WL 6825688 (N.D. Ill. Nov. 20, 2020) .......................................10, 13

**Other Authorities**

3 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 9:14 (6th ed. 2022) ...........9

## INTRODUCTION

Defendants' (collectively, "Actelion's") motion should be denied in its entirety. ***First,*** in order to obtain discovery from an absent class member, courts require a party to establish several factors, including that the discovery is "necessary." Actelion does not even attempt to meet this high standard. Rather, it seeks five different categories of documents from a non-party, the Mayor and City Council of Baltimore ("Baltimore"), for one purported reason: the information is "*relevant* to a key issue in this case—the price that class members paid for Tracleer."[1] But *necessity* is the standard, not mere relevance. Presenting argument under the incorrect standard is not the only way in which Actelion is not fully candid with the Court. Nowhere in its brief does Actelion acknowledge that it *already has in its possession* data spanning over four years that shows the *actual* prices paid for Tracleer and generic Tracleer by *thousands* of class members. This fact alone should be fatal to its motion.

***Second,*** Actelion's decision to seek information it already possesses, its lack of candor regarding that fact, and the timing of its motion all raise real concerns regarding its intentions. Actelion agreed to jointly stipulate to the voluntary dismissal of Baltimore from this case almost a year ago. In doing so, Actelion did not request the production of any documents and agreed that Baltimore would not produce any discovery in response to then-pending Requests for Production. Actelion then waited four months and circumvented this agreement by issuing a subpoena, which was *broader* than the discovery it had agreed to when Baltimore was a named plaintiff. It then ignored the subpoena for the better part of a year and waited until the *last* day of fact discovery, when depositions are at a fever pitch, to file this motion. Tellingly, on nearly *every page* of its

---

[1] Mem. of Law in Supp. of Defs.' Mot. to Compel Non-Party Mayor & City Council of Baltimore to Produce Docs. in Resp. to Defs.' Rule 45 Subpoena ("Actelion Br.") at 2 (emphasis added).

briefing, Actelion focuses on Baltimore's role as a former named plaintiff. It does so at the expense of ever explaining what this Court actually needs to know in deciding this motion, including what any of the discovery it seeks is, why Actelion needs those documents in general or from Baltimore specifically. Actelion cites *no* case that suggests, let alone establishes, that a non-party can be subject to discovery based solely on its role as a former named plaintiff. Actelion must establish the threshold factors, including that the requested discovery is *necessary*. That Actelion has been litigating this case for well over a year and is still unable to come up with anything more than a boilerplate assertion of relevance speaks to its true motivation in filing this motion.

In light of the total lack of justification for the requested materials, the substantial likelihood of harassment, and Actelion's dilatory conduct, the motion to compel should be denied.

## BACKGROUND

On December 16, 2021, Actelion and Baltimore agreed to file a joint stipulation to voluntarily dismiss Baltimore's claims in this case without prejudice. *See* Stip. of Voluntary Dismissal of Pl. Mayor & City Council of Baltimore, Dkt. No. 101. At that time, Actelion could have requested that Baltimore agree to produce discovery as a condition for agreeing to the joint stipulation.[2] It did not. Instead, when counsel for Baltimore asked whether Actelion would agree that the "substantial completion deadline does not apply to [Baltimore]" given its expected status as a non-party, counsel for Actelion did not object. Ex. 1, Email from S. Robertson to D. Hernandez, Dec. 16, 2021. Counsel for Actelion likewise did not object when counsel for Baltimore confirmed, following Baltimore's dismissal from the case, that, "consistent with our e-

---

[2] For the reasons expressed elsewhere in this brief, such a request would not have been justified under the circumstances. Nevertheless, if Actelion believed it was entitled to discovery from Baltimore, it could have and should have identified the issue then.

mail exchange and the parties' joint stipulation . . . Baltimore will not be producing documents or data in response to the [Requests for Production]." Ex. 2, Letter from E. Burns to D. Hernandez at 1, Jan. 4, 2022.

Four months passed, and Actelion appeared to be adhering to the understanding that it would not seek discovery from Baltimore. But something changed, following Baltimore's dismissal: Actelion retained different counsel. And then, on April 19, 2022, Actelion served a non-party subpoena seeking discovery from Baltimore. *See* Ex. 3, Subpoena to Produce Documents, Information, or Objections to Mayor & City Council of Baltimore, April 19, 2022. The discovery requests contained in the subpoena were identical to the initial requests for production served on the named plaintiff, Government Employees Health Association ("GEHA"). The subpoena also included many document and data requests that GEHA and Actelion had agreed, through months of negotiations, to narrow or forgo. In other words, the non-party subpoena served on Baltimore sought *even broader* discovery than the scope of discovery agreed upon by the parties to this litigation for the named plaintiff.

Baltimore timely served its responses and objections on May 11, 2022. *See* Actelion Br., Ex. A.[3] Those responses and objections made clear that Baltimore would not produce any documents in response to Actelion's subpoena. *Id.* The parties met and conferred on May 25, 2022. *See* Ex. C at 4. During the meet and confer, Actelion relied on the purported relevance of the requested materials and was unable to offer any explanation as to why it needed the documents at issue. Actelion was also unable to offer any justification as to why a non-party should be subject to greater discovery demands than the named plaintiff. Nor did Actelion respond to Baltimore's

---

[3] References to Exhibit A through C herein are to the exhibits attached to Actelion's Brief.

contention that the requested information was already in Actelion's possession. Accordingly, Baltimore reiterated that it would produce no documents in response to Actelion's subpoena.

At that point, Actelion could have moved to compel. It did not. Actelion could have followed up promptly with a letter addressing the issues raised in Baltimore's objections and responses and follow-up meet and confer. It did not. Instead, Actelion returned to radio silence. It failed to address the Baltimore subpoena for over two more months, until it sent correspondence on August 11, 2022. *See id.* at 1.

In its August correspondence, Actelion pressed for *all* of the documents identified in the subpoena that might exist, despite the fact that it had agreed to forgo much of the same from the named plaintiff in this litigation. *See id.* at 2. Actelion also failed to acknowledge the heightened standard for obtaining discovery from absent class members, or that it already had in its possession the documents and data that it was pursuing from Baltimore. *Id.* And although Actelion's letter acknowledged that it must demonstrate that the discovery was "reasonably necessary," not a single line in its letter was devoted to explaining why any of the discovery it was seeking was in fact necessary. *Id.* at 1. Instead, in a throw away sentence, Actelion stated: "Last but not least, the information sought by the Subpoena is *relevant* to common issues regarding, *inter alia*, the presence of [sic] absence of class-wide injury." *Id.* at 2 (emphasis added).

On September 2, 2022, Baltimore provided a detailed response, explaining why "relevance" is not the standard, and, as a factual and legal matter, the requested discovery was neither necessary nor appropriate. *Id.* at 4-6. In a follow-up discussion on September 15, 2022, Actelion offered for the first time to narrow its subpoena requests to the same documents and data requests that it is pursuing via this motion: (1) transactional purchase data for Tracleer and generic bosentan; (2) Pharmacy Benefit Manager ("PBM") agreements; (3) formulary documents; (4) plan

design documents; and (5) step-therapy documents. *Id.* at 8. In an email dated September 20, 2022, Actelion provided the same boilerplate reason for its request as to each category of documents: "it speak[s] to" the amount "members paid" or were "required to pay." *Id.* at 8.

In response, Baltimore identified for Actelion the data and documents that it had produced in this litigation and that that were publicly available, which demonstrated that Actelion does not need the discovery that it was seeking. Actelion manufactures Tracleer, the product at issue in this litigation. It sells Tracleer to members of the putative class through a limited number of specialty pharmacies. Several of the contracts that it entered into with the limited number of specialty pharmacies that distribute Tracleer provide that "[a]ny and all data and records with respect to each Patient and each order for [Tracleer (bosentan)], including all data and records in that Database, in whatever form or however maintained or stored, shall be and remain the joint property of Specialty Pharmacy and Actelion." *See id.* at 7; *see also*, Ex. 4, ACTLN00073067 at '079. In other words, Actelion *owns* or has *access to* a significant amount of the very transactional data that it is pursuing from Baltimore, a non-party. As Baltimore explained, the data Actelion owns includes not only the details of the actual prices paid by Baltimore for Tracleer, but the *price paid for Tracleer purchases made by thousands of putative class members during the class period*. Ex. C at 7-8.

Further, Baltimore also explained that the named plaintiff in the litigation, GEHA, subpoenaed the various specialty pharmacies who distribute Tracleer and obtained transactional purchase data in response. *Id.* That data includes the actual price paid by putative class members for *thousands* of Tracleer purchases and purchasers—nearly every, if not every, Tracleer and generic Tracleer transaction. The named plaintiff produced that data to Actelion months ago. *Id.*

Separately, Baltimore explained that Actelion also obtained purchase data from the named plaintiff in this litigation, GEHA. Accordingly, because Actelion: (1) owns class-wide data regarding the prices paid by potential class members for Tracleer; (2) obtained class-wide data via GEHA's subpoenas regarding the prices paid by all or virtually all class members for Tracleer and generic Tracleer; and (3) had GEHA's data regarding the prices it actually paid for Tracleer and generic Tracleer, there could be no justification for seeking any data or documents regarding the price paid by Baltimore for these products. The data Actelion owned *and* possessed was not only overlapping, but more robust than any data that it could possibly obtain from Baltimore. Baltimore also explained that Actelion had formulary documents and numerous other formulary documents were publicly available. *Id.* As a result, Baltimore implored Actelion not to burden the Court with motion practice regarding documents that it already had access to, owned, and possessed. In a follow-up meet and confer, Actelion indicated that it would withdraw its request for transactional data.[4] Yet Actelion continued to press for all of the other categories of documents. In response, Baltimore reiterated its prior position: unless Actelion could demonstrate that any of the categories of documents were in fact necessary and not already within Actelion's possession, it would not produce any documents in response to the subpoena.

Actelion did not provide a written response. Instead, on October 3, 2022, the final day of fact discovery, *see* Dkt. No. 157, Actelion moved to compel. *See* Defs.' Mot. to Compel Non-Party Mayor & City Council of Docs. in Resp. to Defs.' Rule 45 Subpoena, Dkt. No. 166.

---

[4] Despite indicating that it was withdrawing its request for transactional data, Actelion's moves to compel production of the same through this motion.

**LEGAL STANDARD**

Actelion acknowledges that the appropriate standard for discovery from absent class members is described in *Burnett v. Ford Motor Co.*, No. 3:13-cv-14207, 2015 WL 3540886 (S.D. W.Va. June 4, 2015). *See* Actelion Br. at 2-4 & n.3. Yet, Actelion glaringly omits the *Burnett* court's recognition that, as a threshold matter, "the generally accepted rule is that 'discovery from . . . unnamed class members *is not permitted* absent special circumstances.'" *Burnett,* 2015 WL 3540886, at *1 (emphasis added) (quoting *Khaliel v. Norton Healthcare, Inc. Ret. Plan*, No. 3:08-CV-69-C, 2012 WL 6554714, at *1 (W.D. Ky. Nov. 20, 2012)).

Indeed, discovery of absent class members is barred unless the movant can establish four independent criteria: (1) "the discovery is necessary"; (2) "the discovery seeks information that is not already known by the proponent"; (3) "responding to the discovery requests would not require the assistance of counsel"; and (4) "the discovery is not designed to take undue advantage of class members or to reduce the size of the class." *McPhail v. First Command Fin. Plan., Inc.*, 251 F.R.D. 514, 517 (S.D. Cal. 2008) (citing *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-42 (7th Cir. 1974)), *quoted in Burnett*, 2015 WL 3540886, at *1; *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986) (similar articulation of *Clark* test).[5] A general "prohibition" on discovery from absent class members is necessary, otherwise, "the 'principal advantage of a class action will be forfeited.'" *Burnett*, 2015 WL 3540886, at *1 (quoting *Khaliel*, 2012 WL 6554714, at *1); *McPhail*, 251 F.R.D. at 517 ("[A]n absent class-action plaintiff is not required to do anything." (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985))).

When the requested discovery threatens case deadlines, "timing concerns" require the movants "to make a stronger showing of need for the [discovery] they seek from absent class

---

[5] Baltimore here addresses the *Clark* factors in the order most pertinent to this dispute.

members." *In re Fedex Ground Package Sys., Inc., Emp. Pracs. Litig.*, No. 3:05-MD-527-RM, 2007 WL 733753, at *8 (N.D. Ind. Mar. 5, 2007).

Actelion's last-minute motion to compel fails to satisfy any of the *Clark* criteria, much less all of them. The motion should be denied.

## ARGUMENT

### I.   Actelion Has Failed to Satisfy the Factors Necessary to Obtain Discovery From an Absent Class Member

Despite the passage of almost a year, Actelion continues to be unable to articulate any need for the discovery it now seeks to compel. Nor is it candid with the Court regarding its ownership and possession of the very pricing information it is demanding from a non-party.

### A.   The Requested Discovery Is Unnecessary and Duplicative of Information Already in Actelion's Possession.

In addressing the necessity standard, Actelion provides only one purported reason for pursuing all five categories of discovery it seeks: "the requested information is relevant to analyzing the price that a health plan and its members paid for Tracleer." Actelion Br. at 5. Actelion's argument fails to address, let alone satisfy its burden of establishing necessity, particularly because it already owns and possesses the very pricing information it seeks. Its motion should be denied on this basis alone.

#### 1.   Actelion's reliance on "relevance" rather than the established standard of "necessity" dooms its motion.

As an initial matter, Actelion's stated position for seeking discovery from Baltimore is based entirely on its purported "relevance." Actelion Br. at 5. But this misstates the rule. Actelion must show that the information is *necessary*, not just *relevant.* As the Court in *Burnett* put it, the proponent "must demonstrate a specific and actual need for the discovery." *Burnett*, 2015 WL

3540886, at *1. It is not enough to claim that discovery from absent class members "will certainly be relevant to issues of class certification." *Fedex*, 2007 WL 733753, at *7 (denying motion to compel). This is because "[m]ere relevance and helpfulness do not constitute a need." *Id.* The necessity standard for non-party discovery is thus more stringent than "the normal standard for discovery requests." 3 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 9:14 (6th ed. 2022). Nowhere in its motion does Actelion even attempt to explain why it *needs* pricing information from Baltimore.[6]

### 2. Actelion cannot establish necessity because it owns and possesses data on the price that virtually every class member paid for Tracleer and generic Tracleer.

Actelion was well aware when it filed its motion, although it did not inform the Court, that it both owns and has in its possession data that details the prices paid by all, or nearly all, potential class members during the entire class period. Indeed, Baltimore explicitly pointed this out to Actelion weeks before Actelion filed this motion. *See* Ex. C at 7-8; *see also* Ex. 4, ACTLN00073067 at '079; *see also* Ex. 5, KFHP-TRACLEER_0001. That data provides details regarding the actual prices paid for Tracleer and generic Tracleer by *thousands* of health plans and members across the country—not just Baltimore or the named plaintiff in this litigation. Where, as here, Actelion owns and has it its possession transactional data detailing the prices paid for *all or nearly all* Tracleer and generic Tracleer purchases made by *all or nearly all class members during the class period*, it cannot satisfy the necessity requirement.

---

[6] In one sentence, Actelion almost makes an argument under the correct "necessity" standard—but then demonstrates that it is incorrectly equating necessity with relevance. *See* Actelion Br. at 5 ("Second, the information sought is necessary *because it is relevant* to whether class members suffered a common injury." (emphasis added)).

Actelion also concedes that it "may have received similar discovery from [named plaintiff] GEHA." Actelion Br. at 5. It did. The materials GEHA produced include transactional data, formulary documents, PBM contracts, and plan design documents—the exact categories of documents Actelion seeks from non-party Baltimore.

Actelion's ownership and possession of actual pricing data from multiple sources that is even more complete and robust than any pricing information or data that Baltimore could provide underscores the fact that it does not need the information it is seeking.

### 3. The documents Actelion seeks do not contain Tracleer-specific pricing information.

Actelion also demands formulary documents, step-therapy documents, plan design documents, and PBM agreements. Its only stated basis for seeking these documents is to "analyz[e] the price that a health plan and its members paid for Tracleer." Actelion Br. at 5. But *none* of those documents contain any information regarding how much individual class members paid out-of-pocket for Tracleer or generic Tracleer.

Perhaps recognizing this, Actelion engages in no analysis—*none*—of the categories of documents it requests. *See Zollicoffer v. Gold Standard Baking, Inc.*, No. 13-CV-1524, 2020 WL 6825688, at *3 (N.D. Ill. Nov. 20, 2020) (denying discovery where the proponent did "not explain how each of its 10 proposed interrogatories is designed to" inform the question of liability). It does not even explain for the Court what a "PBM agreement" is, let alone why such agreements are necessary to this case. The same goes for formularies, health plan design documents, and step-therapy edits. Having not even explained what these documents are, it is no surprise that Actelion also fails to identify what pricing information each might contain, or what unique pricing information each category purportedly contains that makes it necessary above and beyond the other categories. Actelion also offers no explanation whatsoever for why it needs documents *particular*

*to Baltimore*, which is just one class member out of thousands. Actelion likewise does not explain why it would need any pricing information that is purportedly reflected in those documents, given the comprehensive data that it owns and possesses regarding *actual* prices paid by *thousands* of health plans and members across the country for Tracleer and generic Tracleer during the class period. Its silence betrays the weakness of its position.

The pricing data is not the only category of documents which Actelion already possesses. Actelion's brief fails to reveal that formulary documents are also already in its possession. A formulary is a list of drugs typically created by a PBM that identifies which prescription drugs the plan will cover. Actelion negotiates formulary placements *directly* with market participants— including PBMs— and its contracts with those entities give it the right to obtain formularies. *See, e.g.*, Ex. 6, ACTLN01293399 at '406 (stating that ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ). Actelion also does not advise the Court that it has subpoenaed third parties in this case for formulary documents and has already obtained over 150 formulary documents in response.[7] Actelion likewise does not advise the Court that formulary documents are publicly available and widely accessible. *See, e.g.*, Ex. 7, *2016 Express Scripts National Preferred Formulary*, Express Scripts (July 31, 2015), https://www.express-scripts.com/art/open_enrollment/NPFAlpha_WCI_TWRLEGACY.pdf.[8]

---

[7] Just days after filing its motion to compel, Actelion shared with Plaintiff in this litigation over 200 formulary documents it received from multiple third parties, including Ascent Health Services LLC and OptumRx. *See, e.g.*, Ex. 8, ORX0005237, Your 2018 Formulary, July 1, 2018.

[8] This publicly available formulary document is similar or identical to the type of formulary document that Baltimore would have received from its PBM.

In light of the massive amount of pricing and other information at Actelion's fingertips from its own documents, from GEHA, and from third parties, there is no additional value to the requested materials from Baltimore. The sole justification Actelion offers for this discovery is that it will purportedly illuminate "whether class members suffered a common injury" for the purpose of class certification. Actelion Br. at 5. But the industry-wide data and documents already available to Actelion, covering thousands of purchasers, are plainly more useful for determining whether injuries are "common" to the class than the data and documents of a single class member. The requested discovery adds nothing.

### B. The Requested Discovery Requires Substantial Assistance from Counsel and Improperly Harasses Baltimore and Its Counsel.

Courts recognize that "requests that are unduly burdensome, or require the absent class members to obtain legal or expert assistance, may be used as tools to intimidate the members or reduce the class size." *Burnett*, 2015 WL 3540886, at *1. For that reason, the proponent of the discovery must show that "responding to the discovery requests would not require the assistance of counsel." *McPhail*, 251 F.R.D. at 517. Courts also deny discovery of absent class members unless the proponent can establish that the discovery "is not sought with the purpose or effect of harassment or altering membership of the class." *McCarthy v. Paine Webber Grp., Inc.*, 164 F.R.D. 309, 313 (D. Conn. 1995).

From the day it was served, Actelion's overbroad subpoena has required substantial assistance from counsel. The subpoena has required counsel to attend multiple meet-and-confer discussions and prepare substantial correspondence explaining the deficiencies of the subpoena. Without counsel, Baltimore would have no way of knowing that the subpoena explicitly demanded the production of a broader swath of documents than even the named plaintiff in this litigation had agreed to produce. *See, e.g.*, Ex. A at 16 (noting that Request No. 5 "seeks documents . . . which

12

Defendants agreed to forgo from . . . the current Plaintiff in this litigation"). Despite knowing this, Actelion continued to press for those documents, even as late as August of this year.

Similarly, without assistance of counsel, Baltimore, and indeed this Court, would have no idea that Actelion owned and was in possession of pricing data that was far more robust and complete than that which it was attempting to obtain from Baltimore. Nor would the Court or Baltimore have been aware of Actelion's substantial access to and receipt of, hundreds of formulary documents. Actelion's hide-the-ball tactics have necessitated the involvement of counsel.

Even without Actelion's gamesmanship, responding to Actelion's subpoena would require substantial assistance from counsel. For instance, Actelion's subpoena requests "all Documents relied on in investigating the allegations contained in the Complaint." Ex. 3 at 6. Responding to that request would require the involvement of counsel who actually drafted the complaint.[9] The subpoena also requires Baltimore to supplement its responses until this case is terminated, acknowledges the likelihood that the requested materials contain documents subject to attorney-client privilege, and requires a privilege log for any privileged materials. *See id.* at 4, 6. Monitoring the status of ongoing litigation and conducting a privilege review are quintessential tasks for counsel. The subpoena thus "explicitly contemplates [the] possibility" that Baltimore would "consult with counsel." *Zollicoffer*, 2020 WL 6825688, at *3.

Producing documents in response to this subpoena would be a substantial undertaking for Baltimore and its counsel. Baltimore's transaction data is maintained by a third-party and

---

[9] Actelion's motion to compel does not seek responses to this document request. *See* Actelion Br. at 1 n.1. However, Actelion only agreed to narrow the scope of its subpoena during a meet-and-confer with counsel for Baltimore. *See* Ex. C at 8. The fact that Actelion was forced to narrow the scope of the subpoena during negotiations with Baltimore's counsel is a further demonstration that Actelion's subpoena necessitated counsel's involvement.

retrieving that data would require time and the assistance of counsel. Even where the subpoena requests materials in Baltimore's possession, it would take time to review them for responsiveness and privilege, create a privilege log, apply redactions and confidentiality labels, Bates-stamp the production, and finally produce. This is a substantial burden, particularly where Actelion's stated reason for the subpoena (i.e., obtaining relevant pricing data) is obviated by the data it owns and possesses. Under these circumstances, *any* burden associated with producing documents would not be proportionate to the needs of this case. *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified.").[10]

In assessing whether the discovery has the purpose or effect of harassing Baltimore, the Court should be aware of the larger context for Actelion's motion. As Actelion is well aware, counsel for Baltimore also represent the named plaintiff, GEHA, in this litigation. After failing to act for months, Actelion filed its motion to compel at the precise moment discovery in this case is at a fever pitch. Counsel for GEHA took five depositions in the weeks preceding Actelion's motion and are scheduled to take eight more depositions this month. These depositions include witnesses and issues that are central to this case. The timing of the motion to compel, in combination with the flimsy justification Actelion has offered for its subpoena, raise serious questions about the purpose of the motion. The Court should reject this attempt to interfere with counsel's work on behalf of the class. *Cf. Vedachalam v. Tata Am. Int'l Corp.*, No. C 06-00963, 2011 WL 13161567,

---

[10] Actelion ignores this standard, citing instead to *Hall v. Marriott Int'l Inc.*, No. 3:19-cv-01715, 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021) to argue that responding to these requests would not constitute an undue burden. Actelion Br. at 7. That case is inapposite. It articulates the standard for obtaining discovery from a *party*, not a non-party.

at *1 (N.D. Cal. Aug. 12, 2011) (denying discovery where "Defendants' insistence on these three depositions [of absent class members], despite the significant other discovery it has already obtained . . . . indicates a possible attempt to unduly burden these class members").

## II. Baltimore's Former Named Plaintiff Status Does Not Justify Discovery.

Perhaps in recognition of the weakness of its case under the standard factors, Actelion spends much of its brief arguing that a more relaxed standard should be applied to Baltimore because it was previously a named plaintiff in this litigation. *See, e.g.*, Actelion Br. at 2-3. But there is no basis in logic or in the case law for treating a class member who was dismissed as a named plaintiff nearly a year ago any differently from other absent class members.

As a non-party who is no longer actively participating in this litigation, Baltimore is "on equal footing with unnamed, absent class members." *Vedachalam*, 2011 WL 13161567, at *1. Where a named plaintiff "ha[s] withdrawn and instead currently ha[s] no more involvement in the case than any other absent class member," it "ha[s] done the opposite of asserting [itself] into the litigation." *A.B. v. Pac. Fertility Ctr.*, No. 18-cv-01586-JSC, 2019 WL 6605883, at *1 (N.D. Cal. Dec. 3, 2019). Discovery from Baltimore should therefore be subjected to the same test as discovery from any other unnamed class member. *See, e.g.*, *In re USA Classic Sec. Litig.*, No. 93-CV-6667 (JSM), 1995 WL 686724, at *1 (S.D.N.Y. Nov. 17, 1995) (granting a motion for a protective order to quash discovery from absent class members because they "have withdrawn as class representatives" and "there is no particularized need" for their testimony); *Vedachalam*, 2011 WL 13161567, at *1-2 (applying the *Clark* test to deny discovery from class members who "withdrew their declarations" in support of class certification); *Feldman v. Motorola, Inc.*, No. Civ-A-90-C-5887, 1992 WL 415382, at *6-7 (N.D. Ill. Nov. 5, 1992) (recognizing that *Clark*

15

applies to a "named plaintiff who seeks to shed his or her status as class representative" and denying discovery).

Actelion cites cases that "have held that discovery of [an] absent class member is appropriate" where that class member previously participated in the case. Actelion Br. at 3. But these cases merely apply the standard *Clark* factors for absent class member discovery. Indeed, in *Burnett*, the Court analyzed all of the *Clark* factors and found that the Defendant had established each of them, including both "necessity" and that the information sought "cannot be obtained" from elsewhere. *See Burnett*, 2015 WL 3540886, at *2-3 (applying *Clark* test); *In re Drassinower*, No. 3:19-CV-1715-JLS-AHG, 2021 WL 3772328, at *6 (S.D. Cal. Aug. 25, 2021) (same). None of the cases Actelion cites hold that an absent class members role as a former class representative allows a defendant to circumvent the four-factor test or that a different, more relaxed standard applies.

Actelion also presses the narrower argument that Baltimore's previous status as a named plaintiff shows that the discovery was not intended to target Baltimore and that discovery would not be unduly burdensome. *See* Actelion Br. at 4-7. This has it exactly backwards. The fact that Baltimore was previously a named plaintiff suggests the possibility that Actelion intends to improperly "burden [Baltimore] for previously participating in the litigation." *Vedachalam*, 2011 WL 13161567, at *1. And in light of the data Actelion owns and possesses containing actual pricing information for *thousands* of class members, Actelion's contention that it is pursuing discovery of a "*single* class member out of thousands" rings hollow. Actelion Br. at 4. This is all the more reason to view the discovery with skepticism, not to bless it. *Vedachalam*, 2011 WL 13161567, at *1. Nor does Baltimore's prior participation in the case reduce the burden of compliance or alleviate the need to rely on counsel. As explained above, responding to the

16

subpoena has and will require new and cumbersome efforts to identify, review, and produce responsive documents, including cooperating with the third-party vendor that possesses Baltimore's transactional data.

In any case, Actelion advances no argument that Baltimore's status as a former named plaintiff diminishes its obligation to make a showing of "particularized need" to obtain discovery. *In re USA Classic Sec. Litig.*, 1995 WL 686724, at *1. Yet that central deficiency is fatal to the motion to compel even standing alone.

**III.    The Requested Discovery is Untimely.**

The timing of Actelion's enforcement of this subpoena should raise substantial concerns. Actelion has been aware since December 2021 that Baltimore did not intend to produce any documents in this litigation. The cases cited by Actelion recognize that Actelion could have requested that Baltimore agree to produce discovery as a condition for agreeing to jointly stipulate to its dismissal from this case. *See* Actelion Br. at 5 (citing *Plavin v. Grp. Health Inc.*, No. 3:17-CV-1462, 2022 WL 2310183, at *14 (M.D. Pa. June 27, 2022) (granting a named plaintiff's motion for voluntary dismissal on the condition that he comply with outstanding discovery obligations)). Yet, Actelion waited almost an entire year, until the last day of fact discovery, to move to compel production.[11] The implications of Actelion's dilatory conduct are threefold.

First, the delay casts doubt on Actelion's stated justifications for the subpoena. If the discovery were truly "necessary," Actelion would not have ignored it for the better part of a year.

---

[11] Actelion places form over substance in arguing that despite agreeing to forgo discovery from Baltimore in stipulating to its dismissal from this case, it was nonetheless entitled to serve a Rule 45 subpoena with both *identical and more expansive requests* than those that the parties agreed to when Baltimore was a party to this litigation. *See* Actelion Br. at n.2. Not surprisingly, Actelion does not cite any case where a court has condoned such conduct, particularly where it is accompanied by almost a year-long delay and no explanation of necessity.

As explained herein, although the fact discovery deadline was October 3, 2022, the parties agreed to extend the date to take depositions by another month. *See* Am. Scheduling Order at 1, Dkt. No. 167. Actelion's decision to wait months and then only move when interim class counsel are in the midst of depositions raises concerns about the purpose of the discovery.

Second, this type of lackadaisical approach to discovery raises the bar for the "necessity" showing that Actelion must make. Because of Actelion's dawdling, allowing more discovery at this late stage "threaten[s] . . . deadlines" in this case, including upcoming deadlines for the completion of fact discovery and expert reports. *Fedex*, 2007 WL 733753, at *8. The deadline to substantially complete document production was in December 2021. And the deadline for all fact discovery passed on October 3, 2022. Requiring the production of additional documents at this late date would take time and interfere with preparations for depositions and Plaintiff's upcoming expert report deadline, particularly where, as Actelion acknowledges, counsel for Baltimore is also counsel for the proposed class in this litigation. Where court-ordered deadlines are jeopardized by last minute discovery requests to absent class members, movants must "make a stronger showing of need for . . . documents they seek." *Id.* But, as demonstrated herein, Actelion has not established *any* need for the documents, much less the strong showing necessary to disturb the scheduling order in this case.

Finally, Actelion's sluggish behavior is independent grounds for denying the discovery. Courts in this district deny motions to compel filed "close to the discovery cutoff" where they "would disrupt the Court's Scheduling Order by extending the discovery deadline beyond that intended." *Webb v. Green Tree Servicing LLC*, No. 11-CV-02105-ELH, 2012 WL 3139551, at *1 (D. Md. July 27, 2012); *see also Derricott v. Target Corp.*, No. 8:07-cv-00506, 2008 WL 11509722, at *7 (D. Md. Feb. 4, 2008) (denying a motion to extend discovery where "Plaintiff had

four months to conduct discovery" and "was provided ample opportunity to obtain any relevant information" yet failed to take advantage of it). Given the unjustified nature of Actelion's delay, this Court should do the same.[12]

## IV. The Court Should Not Consider Any New Purported Reasons Actelion Manufactures in Its Reply Brief For Seeking Discovery From Baltimore.

Given the glaring inadequacies with Actelion's showing of need, Baltimore anticipates that Actelion may attempt to raise new arguments in its reply. This Court should not allow it to do so. Baltimore's positions should not come as a surprise to Actelion. In prior meet-and-confers and in written correspondence, Baltimore explained in great detail why the requested information is not necessary and duplicative of existing materials. *See, e.g.*, Ex. C. at 4-8. Yet Actelion chose to ignore these arguments and instead filed a brief that neither articulates the particularized need it has for the discovery, nor explains why existing data and documents are inadequate. And fact discovery, which lasted well over a year in this case, is closed, except as to depositions. Actelion has had ample opportunity to explain why it needs each category of documents it seeks.  It has come up with nothing, and is not entitled to another bite at the apple. *See United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013) ("[N]ew arguments cannot be raised in a reply brief.").

## CONCLUSION

This Court should deny Actelion's motion to compel Baltimore to produce documents in response to its non-party subpoena.

---

[12] According to the local rules of this district: "The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time, and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court." D. Md. Loc. R. 104.7. Actelion failed to file such a certificate with its motion. This Court can refuse to consider Actelion's motion on this basis alone. *See Webb*, 2012 WL 3139551, at *1.

Dated: October 17, 2022                          Respectfully submitted,

                                                 */s/ Sharon K. Robertson*
                                                 Sharon K. Robertson
                                                 Donna M. Evans
                                                 David O.Fisher
                                                 Aaron J. Marks
                                                 COHEN MILSTEIN SELLERS & TOLL
                                                 88 Pine Street, 14th Floor
                                                 New York, NY 10005
                                                 Telephone: (212) 838-7797
                                                 Facsimile: (212) 838-7745
                                                 srobertson@cohenmilstein.com
                                                 devans@cohenmilstein.com
                                                 dfisher@cohenmilstein.com
                                                 amarks@cohenmilstein.com

                                                 *Counsel for Non-Party Mayor and City*
                                                 *Council of Baltimore*