IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GOVERNMENT EMPLOYEES** | * | |
| **HEALTH ASSOCIATION,** on behalf | * | |
| of itself and all others similarly situated**,** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:18-cv-03560-GLR |
| **ACTELION PHARMACEUTICALS LTD., et al,** | | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Leave to File a Sur-Rebuttal Expert Report (ECF No. 229), Plaintiff's Cross Motion to Strike Sur-Rebuttal Expert Report of James Hughes (ECF No. 244), and Defendants' Reply (ECF No. 252). The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). As set forth more fully below, Defendants' Motion is **GRANTED** subject to certain conditions outlined below, and Plaintiff's Cross Motion to Strike is **DENIED**.

### I. BACKGROUND

Defendant Actelion is a drug manufacturer and Tracleer is one of its products. More than ten years ago, generic drug manufacturers anticipated the expiration of Actelion's patents on Tracleer and prepared to enter the market with generic versions, requesting samples from Actelion to assist them in that process. The instant proposed class action alleges that Plaintiff and other similarly-situated third party payors were forced to pay higher prices for Tracleer due to Actelion's actions in delaying introduction of a generic alternative by wrongfully withholding samples from generic manufacturers.

1

In support of their respective cases, the parties have designated expert witnesses, including Dr. Meredith Rosenthal on behalf of Plaintiff and Dr. James Hughes on behalf of Defendants. Dr. Rosenthal and Dr. Hughes primarily address the extent to which the proposed class members suffered injury as a result of the delay, and whether any such injury can be measured on a class-wide basis without individual inquiries as to each proposed class member (which, in turn, could defeat the certification of the class).

Plaintiff's initial deadline for expert disclosures was December 22, 2022 (ECF No. 196), and Dr. Rosenthal's first report was filed on that date. (ECF No. 229-1 at p. 1).[1] Defendants' expert designation deadline was April 17, 2023, and Dr. Hughes' initial report was timely completed on that date. *Id*. Plaintiff's rebuttal deadline was August 4, 2023 (ECF No. 223), with Dr. Rosenthal completing her Rebuttal Report on that date and her deposition taking place on August 22, 2023. *Id*. at p. 2. On September 12, 2023, the last day of expert discovery, Dr. Hughes produced a proposed Sur-Rebuttal Report, responding to the criticisms raised by Dr. Rosenthal in her August 4, 2023, Rebuttal Report and deposition. *Id*. Defendants attempted to get consent for the Sur-Rebuttal and also offered Dr. Hughes for deposition, but Plaintiff did not consent. (ECF No. 252-5). The present motion and cross motion followed on September 25, 2023, and October 10, 2023, respectively.

Defendants argue that Dr. Hughes' proposed Sur-Rebuttal should be regarded as timely as it was provided on the last day of expert discovery, but in any event, should be viable through Rule 37(c) because any lateness is either harmless or substantially justified based on new information. Plaintiff counters that the proposed Sur-Rebuttal is not contemplated by the Court's

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

2

scheduling order, is not an appropriate "supplement" to Dr. Hughes' April 17, 2023, Report as contemplated by Rule 26(e), runs afoul of Rule 37(c) because there is no new information that would provide the justification to allow it, and because it prejudices Plaintiff.

Of note, the applicable scheduling order contained a deadline to file a motion for class certification and *Daubert* motions relating to class certification by September 26, 2023, and that briefing has begun. (ECF No. 223). Plaintiff has moved to exclude Dr. Hughes based on his April 17, 2023, report and deposition. (ECF No. 238-1). Although Defendants move to exclude Dr. Rosenthal, they do not rely on Dr. Hughes' proposed Sur-Rebuttal Report as part of that motion. Final replies are due on December 22, 2023, though no hearing date has been set for such motions. (ECF No. 223).

As explained below, the Court will permit the report, but will require Defendants to offer deposition dates for Dr. Hughes to occur within fourteen (14) days of the date of this Memorandum Opinion and accompanying Order (unless Plaintiff requests a longer time period), will allow Dr. Rosenthal to file a reply to Dr. Hughes' Sur-Rebuttal Report and deposition testimony within fourteen (14) days of the completion of his deposition (unless Plaintiff requests a longer time), will not authorize Defendants to re-depose Dr. Rosenthal, and will order a reasonable extension of the briefing deadlines to the extent the current certification and *Daubert* briefing is affected by any of the above.

## II. DISCUSSION

### A. Preliminary Considerations

The substance of expert witness disclosures by witnesses retained specifically for litigation is governed by Rule 26(a)(2)(B) in that such experts must provide a written report

3

containing, *inter alia*: "(1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; [and] (3) exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i-iii). As applicable to this case, such disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(3). There is a duty on the party sponsoring the expert to supplement such disclosures (both as to the expert's report and any related deposition testimony) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2).

As an initial matter, the Court has some doubts as to whether the opinions contained in Dr. Hughes' proposed Sur-Rebuttal Report of September 12, 2023, constitute a material addition to the extensive opinions previously disclosed in his original (and indisputably timely) April 17, 2023, report that would even require supplementation under Rule 26(e)(2). To be sure, Dr. Hughes' September 12, 2023, report is "new" given that it is focused on responding to Dr. Rosenthal's August 4, 2023, Rebuttal Report and subsequent August 22 deposition that obviously post-dated Dr. Hughes' original report. But Dr. Hughes' Sur-Rebuttal report chiefly reiterates his previously-disclosed opinions, calibrating them directly to Dr. Rosenthal's rebuttal, as well as pointing out perceived flaws in Dr. Rosenthal's interpretation of the data she relies upon in her rebuttal. The Court could certainly envision a trial judge allowing such testimony even in the absence of an additional report, but it is beyond the scope of the undersigned's referral to rule on that issue.

Plaintiff would no doubt challenge this characterization, insisting that Dr. Hughes' September 12, 2023, Sur-Rebuttal contains new opinions not previously disclosed in two areas. First, in his initial April 17, 2023, report, Dr. Hughes argued in part that internal company documents demonstrated that Actelion was planning a Tracleer price increase prior to the introduction of generics (undercutting Dr. Rosenthal's calculation of the amount of hypothetical price difference with and without earlier introduction of generic competitors). (ECF No. 238-4 at ¶ 13). Plaintiff argues that in his September 12, 2023, Sur-Rebuttal, Dr. Hughes now includes the discontinuation of product rebates as *additional* support for his argument that the cost of brand name Tracleer increased prior to the introduction of generic versions (i.e., that the net cost of Tracleer increased both because the retail price increased <u>and</u> purchaser rebates were discontinued), and Dr. Hughes' criticism that Dr. Rosenthal failed to properly take rebates into account in her Rebuttal Report. (ECF No. 244-1 at pp. 10–12). This is despite the fact that such rebate information was available to Dr. Hughes at the time of his original April 17, 2023, report and could have been included.[2]

But, as Plaintiff acknowledges, a discussion of rebates and their effect on the calculation of class member cost (and, therefore, injury) is not entirely absent from Dr. Hughes' April 17, 2023, report. To the contrary, that report does discuss rebates and their effect on cost to support Dr. Hughes' opinion that individualized damage calculations for class members are required, arguing that without knowing the amount of the particular rebates to individual class members, one cannot fully assess what the net cost of the drug was for them or their resulting injury from the delayed introduction of generic competitors. (ECF 238-4 at ¶¶ 82–89; 94–95). That is, Dr.

---

[2] The rebate issue is also part of the current *Daubert* briefing regarding Dr. Hughes, as Plaintiff argues that rebates should be ignored from analysis as a matter of law. (ECF No. 238-1 at pp. 9–11).

Hughes considers the amount of rebate to be an important component in calculating class member cost (and corresponding injury). Plaintiff even includes a criticism of this in its *Daubert* motion relating to Dr. Hughes. (ECF No. 238-1 at pp. 9–11). Nor is it a surprise to either party that such rebates were discontinued in January of 2019 in anticipation of the introduction of generics, as Dr. Rosenthal herself acknowledged at her August 22, 2023, deposition. (ECF No. 229-2 at p. 6 n.15). That such discontinuation of rebates would have the effect of increasing net cost given Dr. Hughes' previous opinions seems less than revelatory. That Dr. Hughes includes a calculation in his Sur-Rebuttal of that amount based on the very data Dr. Rosenthal included in her Rebuttal Report also seems inconsistent with its characterization as a material change.

The second area that Plaintiff's argue amounts to a new and material change is Dr. Hughes' analysis of third-party data (from Acredo, Cigna, and Optum) in a different way from how he analyzed it in the original report. (ECF No. 244-1 at pp. 12–13). Dr. Hughes' conclusion from the data, however, remains the same: significant numbers of the proposed class members show no evidence of injury. *Id*. Rather than a new and material opinion, one could reasonably conclude that Dr. Hughes was merely reacting to Dr. Rosenthal's rebuttal opinion by arguing that her analysis of the third-party data is incorrect as to Acredo, Cigna, and Optum, and additionally that she should have included the more recently-provided, updated Humana data for completeness. (ECF No. 229-2 at pp. 11–13).

The Court reiterates that a trial judge might well allow Dr. Hughes to express such criticisms of Dr. Rosenthal's methodology and conclusions at trial in the absence of a sur-rebuttal report or supplementation, although it makes no ruling on this issue. At the same time, the Court is mindful that its reactions to Dr. Hughes' proposed Sur-Rebuttal are not as well-

informed as the parties, and that the detailed technical analysis offered by both experts may well contain nuances under-appreciated by the Court. Additionally, Actelion itself has postured this dispute in a way that assumes Dr. Hughes' proposed Sur-Rebuttal Report contains information that requires some Court action before it may be relied upon by Actelion in its defense. As such, the Court will assume for purposes of its analysis and decision-making that Dr. Hughes' proposed Sur-Rebuttal Report either must qualify as a valid supplementation pursuant to Rule 26(e) or, alternatively, must be substantially justified or harmless under Rule 37(c).

### B. The Proposed Sur-Rebuttal Does Not Qualify As "Supplementation" As Contemplated by Rule 26(e)

This Court has had the opportunity to address whether additional information or reports supplied by an expert after the scheduling order's expert disclosure deadline qualifies as appropriate "supplementation" under Rule 26(e). For example, in *EEOC v. Freeman*, Judge Titus of this Court concluded that a "supplemental report and declaration" by the plaintiff's expert, submitted only after the admissibility of that expert's opinion was challenged by *Daubert* motion, went impermissibly beyond the supplementation envisioned by Rule 26(e), stating, "[N]ew reports provided under the guise of 'supplementation' cannot be produced to 'address the criticisms that [defendants] raised in their memorandum in support of summary judgment.'" 961 F. Supp. 2d 783, 797 (D. Md. 2013) (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 629 (E.D.N.C. 2008)). Judge Titus emphasized that Rule 26(e) did not represent a "'loophole through which a party . . . who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions there, can add to them to her advantage after the court's deadline for doing so has passed.'" *Id*. (citing *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x. 496, 500 (9th Cir. 2009) (denying supplementation offered in response to opponent's motion for summary judgment)). This is consistent with the Fourth Circuit's

7

interpretation that supplementation under Rule 26(e) "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information *that was not available at the time of the initial report.*"  *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 212 (4th Cir. 2017) (emphasis added); *see also Prusin v. Canton's Pearls, LLC*, No. JKB-16-605, 2017 WL 349216, at *3–4 (D. Md. Aug. 15, 2017) (Judge Gallagher of this Court concluding that where proposed supplemental report was, in part "a response to the report produced by [the opposing expert]" and based on "materials that were available to him prior to his initial submission," it did not meet the requirements of Rule 26(e) and instead should be analyzed under Rule 37(c)); *EEOC v. Performance Food Group, Inc.*, No. MJG-13-1712, 2018 WL 3608745, at *2 (D. Md. July 27) (same).

     Consistent with the above jurisprudence, the Court must conclude that the proposed Sur-Rebuttal does not qualify as a valid supplementation under Rule 26(e).  With the limited exception of updated Humana data being referred to in support of one criticism of Dr. Rosenthal's rebuttal, the Sur-Rebuttal is not based on information not available to Dr. Hughes prior to his initial April 17, 2017, report.  While Dr. Rosenthal's Rebuttal Report opinions are "new" in the sense that they post-date Dr. Hughes issuing his original report, Dr. Rosenthal's report is not based on new *facts*.  By its very nature, any rebuttal report will have "new" opinions in that it is issued in direct response to the opposing expert's report, but to read Rule 26(e) as permitting an expert to have a "right of reply" to criticisms contained in a rebuttal report would create a potential endless loop of supplementation that is inconsistent with the Court's responsibility to manage its cases to ensure a "just, speedy and inexpensive" resolution consistent with Fed. R. Civ. P. 1.

This holding regarding Rule 26(e) highlights a tension for courts and for litigants. On the one hand, the orderly administration of the court docket and the reasonable expectation of the parties is that at some point, the expert discovery is done, the field of play is set, and the case should enter its next phase of motions practice and potentially trial. On the other, a party's expert will virtually always have a response to an opposing expert's rebuttal even if that rebuttal introduces no new data or facts, raising the reasonable question of whether a party should disclose that response through supplementation, or should instead wait for dispositive motions and trial and hope that such a response is considered part of the expert's original opinions. A party that errs on the side of caution and attempts to supplement runs into the jurisprudence cited above. A party who does nothing runs the risk of exclusion. One path forward might be to change the argument from a focus on the substance of the supplementation (i.e., is it based on previously unavailable facts) to a greater focus on timing,[3] such as establishing an overall supplementation deadline as is sometimes seen in scheduling orders. That change must wait for future cases or rule changes.

### C. Allowing The Proposed Sur-Rebuttal Report Is "Harmless" Pursuant to Rule 37(c)

Having found that the proposed Sur-Rebuttal Report does not meet the requirements of Rule 26(e), its only potential pathway is through Rule 37(c), which reads, in pertinent part, as follows: "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *Id*. Courts have broad discretion in

---

[3] Rule 26(e)(2) provides a deadline of sorts by reference to 26(a)(3) regarding the timing of pretrial disclosures which are due thirty days prior to trial. But that is late in the litigation process, post-dating dispositive motions practice, potentially compounding the problem identified above. *See Tucker v. Ohtsu Tire & Rubber*, 49 F. Supp. 2d 456, 460 (D. Md. 1999).

making the determination of whether a failure to disclose was substantially justified or harmless. *Bresler*, 855 F.3d at 190. The Fourth Circuit has set forth five factors to guide that analysis, as first set forth in *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." 318 F.3d 592, 596 (4th Cir. 2003). The first four of those factors go primarily to the issue of harmlessness while the last one goes to the issue of substantial justification. *Id*. at 597.

As to the factor of surprise, the Court has doubts that Plaintiff is surprised by Dr. Hughes' criticism of Dr. Rosenthal's Rebuttal Report. As noted by the Court above, those criticisms largely consisted of re-purposing opinions contained in Dr. Hughes' original report to specifically rebut Dr. Rosenthal's Rebuttal Report, and/or using Dr. Rosenthal's own data to refute her conclusions. *See Performance Food Group, Inc.,* 2018 WL 3608745 at *2 (concluding surprise minimal where report was consistent with litigant's litigation position). As importantly, any surprise can be adequately cured by allowing Plaintiff to depose Dr. Hughes as to his Sur-Rebuttal report and allowing Dr. Rosenthal to respond with her own written reply. The Court notes that this offer was made proximate to the date of Dr. Hughes' Sur-Rebuttal Report and likely could have taken place well before now, but was rejected by Plaintiff. Additionally, despite this Court's provision of an expedited process for resolving discovery disputes (ECF No. 145), the parties instead opted for traditional briefing, which had the effect of running into the deadline for class certification and related *Daubert* motions.

In terms of the disruption to trial if the Sur-Rebuttal report is allowed, the Court notes that no trial date has been set, but recognizes that briefing for class certification and *Daubert* motions has begun.  Of course, the Sur-Rebuttal Report was offered in advance of that briefing (unlike the situation in several of the cases cited above), and, as noted, the briefing deadline could have been extended had Plaintiff opted to depose Dr. Hughes regarding his Sur-Rebuttal Report through the expedited process outlined by the Court.  But even now, the Court can reasonably extend the deadlines for that briefing as necessary to accommodate the cure previewed above.

Regarding the importance of the evidence, the Court sees benefits to both parties in allowing the Sur-Rebuttal Report.  As to Defendants, allowing the full scope of Dr. Hughes' criticisms of Dr. Rosenthal potentially makes their case more robust, but even from Plaintiff's perspective, it will be in a better position knowing the full scope of those criticisms well in advance of the conclusion of the current briefing and trial.  Based on the above, the Court concludes that the late disclosure meets the "harmlessness" standard of Rule 37(c) such that the Sur-Rebuttal Report will be allowed on that basis.

Because the Court finds that allowing the Sur-Rebuttal Report is "harmless," it need not consider whether there was "substantial justification" for the delay since those standards are in the disjunctive under the language of Rule 37(c).  The Court will observe that it is not convinced that the Sur-Rebuttal would meet the substantial justification standard.  First, as noted in the Court's discussion of Rule 26(e) *supra*, treating Dr. Rosenthal's Rebuttal Report as "new information" as argued by Defendants here essentially nullifies the "substantial justification" requirement given that any rebuttal expert's report would then justify another report from the opposing party (and then another from the original party, etc.)  The Court declines to invite such

11

disruption into the expert process and overall case administration. The only "new" information was updated information from Humana provided July 18, 2023, almost two months before Dr. Hughes' September 12, 2023, Sur-Rebuttal, and the updated CVS information provided more than a month prior on August 1, 2023. (ECF No. 229-1 at p. 1). More importantly, it does not appear that updated CVS data was relied upon by Dr. Hughes in his September 12, 2023, report, and the updated Humana data is not central to Dr. Hughes' Sur-Rebuttal. However, the Court reads Rule 37(c) as allowing the Sur-Rebuttal *either* based on harmlessness *or* based on substantial justification such that both need not be present for the Court, in its discretion, to allow the Sur-Rebuttal Report.

Having allowed the Sur-Rebuttal, the Court will additionally order as follows. First, Dr. Hughes will be offered for deposition as to the Sur-Rebuttal Report with dates occurring within fourteen (14) days of the date of this Memorandum Opinion and accompanying Order (unless Plaintiff requests a longer time). Second, Dr. Rosenthal will have the opportunity to author an additional reply report that responds to Dr. Hughes' Sur-Rebuttal and deposition within fourteen (14) days of Dr. Hughes' deposition (unless Plaintiff requests a longer time). Third, notwithstanding its harmlessness, there was not substantial justification for the late submission of Dr. Hughes' report such that Defendants will not be granted an opportunity to depose Dr. Rosenthal as to any such additional report she may author as contemplated above. *See Pennington Partners, LLC v. Midwest Steel Holding Co.*, 271 F.R.D. 462, 465 (D. Md. 2010) (Judge Grimm of this Court concluding "Because I find that this dispute predominantly was caused by Defendant's disregard of the scheduling order, Defendant will not be permitted to conduct any further discovery of Plaintiff's experts regarding their final rebuttal submissions"). Finally, the parties should confer and then propose to the Court within fourteen (14) days of the

date of this Memorandum Opinion and accompanying Order any joint request to extend the current briefing schedule to accommodate the additional actions outlined above.  If joint agreement cannot be reached, then each side should submit its own proposal.

### III. CONCLUSION

Accordingly, Defendants' Motion for Leave to File Sur-Rebuttal Report (ECF No. 229) is **GRANTED** under the conditions stated above, and Plaintiff's Cross Motion to Strike Sur-Rebuttal Report (ECF No. 244) is **DENIED**.  A separate order follows.


Date: October 27, 2023  /s/
J. Mark Coulson
United States Magistrate Judge